UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DEAN PERKINS, | : | |
|     Plaintiff | : | Civil Action No. 3:05-CV-1946(CFD) |
| | : | |
| v. | : | |
| | : | |
| STATE OF CONNECTICUT, | : | |
| DIVISION OF CRIMINAL JUSTICE, | : | |
|     Defendant. | : | |

RULING ON MOTION FOR SUMMARY JUDGMENT

The plaintiff, Dean Perkins, applied for a position in the Witness Protection Unit of the defendant, the State of Connecticut Division of Criminal Justice, Office of the Chief State's Attorney. It is undisputed that Perkins's application was never provided to the Witness Protection Unit and, consequently, he was not considered to fill this position. Perkins brought this action claiming that he was denied the position as a result of race-based discrimination in violation of Title VII of the Civil Rights Act of 1962, 42 U.S.C. § 2000e, et seq.[1] The Division of Criminal Justice moves for summary judgment.

I. Background[2]

In 2003, Perkins, an African-American, was employed as a Detective in the Internal Values and Ethics Unit of the New Haven Police Department. At that time, Perkins had twenty

---

[1] Additional claims under state law and 42 U.S.C. § 1981 have been withdrawn.

[2] The following information is taken from the parties Loc. Civ. R. Pro. 56(a)(1) and (2) statements and exhibits thereto and is undisputed unless otherwise indicated.

years of experience as a police officer and thirteen years of experience conducting criminal investigations, including narcotics, homicide, and robbery investigations. Perkins does not have a college degree.

In August 2003, the Division of Criminal Justice advertised twelve "Inspector" positions. These included three Inspector positions in Rocky Hill, one in the Witness Protection Unit[3] and two in the Elder Abuse Unit. Perkins was interested in Inspector positions in the Witness Protection Unit, two Inspector positions elsewhere in Connecticut, and in an "Investigator" position also advertised by the Division of Criminal Justice. Perkins was aware of the Elder Abuse positions, but was not interested in them because they were temporary positions.

On August 18, 2003, Perkins submitted a single cover letter stapled to applications for four positions. Perkins' cover letter identified the positions for which he wished to be considered by location only. The cover letter also said "[f]or the Inspector position in Rocky Hill I am submitting an original application, resume, and copies." On his application for the Witness Protection position, Perkins described the position as "Inspector/ Rocky Hill."[4] However, Perkins attached a "Personnel Notice," advertising the availability of an Inspector position in the Witness Protection Unit in Rocky Hill, to the front of this application. The bottom half of the last page of the application was an "Equal Opportunity Employer Application for Employment Supplement." Perkins indicated in this section that he was Black and that he was interested in the Witness Protection position in Rocky Hill. The Equal Opportunity supplement was never

---

[3] According to Perkins' deposition testimony, he believes that "somebody told [him] there were several openings" in the Witness Protection Unit.

[4] The application instructions included that the applicant was to provide the title and location of the position sought.

removed from Perkins' application.[5]

Beverly Pietrandrea was a receptionist for the Office of the Chief State's Attorney at the time Perkins submitted his application. The Division of Criminal Justice received 1,605 applications[6] for the Inspector positions advertised in August 2003. Pietrandrea was responsible for sorting these applications and forwarding them to the appropriate attorney for review. According to Pietrandrea, she did not read the applications or look at the race of the applicants. Pietrandrea added a note reading "(E.A.)" to the "Position Applying for" section of Perkins' application and forwarded the application to the Elder Abuse unit. According to Pietrandrea, she did not know Perkins' race at the time she misdirected his application. Perkins claims that his application may have been misdirected as a result of intentional or unintentional discrimination, and that Pietrandrea "probably knew" his race. However, at his deposition, Perkins said he is "[n]ot saying that's actually why she did it."

In December 2003, Perkins inquired about the status of his application for the Witness Protection position and learned that it was never provided to the Witness Protection Unit. Perkins was not hired for that position or for a position with the Elder Abuse Unit.

According to Perkins, he has seen documents indicating that between October 2001 and February 2004 seven inspectors were hired by the Division of Criminal Justice, and all were white males. The Elder Abuse Unit received ninety-six applications. Perkins also maintains that

---

[5] Perkins' complaint only alleges racial discrimination in connection with his application for the Witness Protection Unit position. During his deposition, Perkins confirmed that the basis of his suit was the Witness Protection Unit position, and not the other positions for which he applied in August 2003.

[6] Because applicants may have applied for more than one position, there were not 1,605 actual applicants.

documents reveal that seven of these applications came from African-Americans. According to Perkins, none of the African-American applicants was interviewed.[7]

Perkins received a "Right to Sue" letter from the Equal Employment Opportunity Commission (EEOC) on January 20, 2006, one month after filing the complaint in this action.

II.    Summary Judgment Standard

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Rule 56(c), Fed.R.Civ.P.; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). A court must grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact....' " Miner v. Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993)

---

[7] Finally, Perkins maintains that he has seen documents indicating that four of the African-American applicants were not considered for the Elder Abuse position because they did not meet the minimum qualifications, and that three were not interviewed because they had little or no job experience.

According to Perkins, the Division of Criminal Justice purports that he was not interviewed for the Elder Abuse position because he lacked adequate experience conducting financial investigations. The applicants hired to fill the Elder Abuse positions were both Caucasian. According to his application, one successful applicant, Michael Sullivan, had over eighteen years of experience as a police officer, and seventeen years of experience in a criminal investigation position. Sullivan's application indicates that he had a masters degree in criminal justice and the rank of Detective Captain. Sullivan's application also indicates that he was the Commander of the Criminal Investigations Division of the New Britain police department. The other successful applicant was Joseph Sazanowicz, Jr. Sazanowicz's application indicates that he had a bachelor's degree in criminal justice and twenty-five years of experience as a police officer. Sazanowicz's application further indicated that he had six years of experience working in criminal investigations and four years of experience as a patrol sergeant.

Perkins does claim in this suit that he was denied the Elder Abuse position because of racial discrimination.

-4-

(citation omitted). A dispute regarding a material fact is genuine " 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992) (quoting Anderson, 477 U.S. at 248). The court "resolve[s] all ambiguities and draw[s] all permissible factual inferences in favor of the party against whom summary judgment is sought." Patterson v. County of Oneida, NY, 375 F.3d 206, 218 (2d Cir. 2004). A party may not create a genuine issue of material fact by resting on the "mere allegations or denials" contained in his pleadings. Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).

III.  Discriminatory Failure to Hire

To establish a prima facie case of discriminatory failure to hire, a plaintiff must show 1) that he belonged to a protected class; 2) that he was qualified for the position for which he applied; 3) that he was denied the position; and 4) that the denial "occurred under circumstances giving rise to an inference of discriminatory intent." Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004) (citing Collins v. New York City Transit Auth., 305 F.3d 113, 118 (2d Cir.2002)); see also Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 101 (2d Cir. 2001) ("The burden upon the plaintiff to prove a prima facie case is minimal.")

The Division of Criminal Justice concedes that Perkins has satisfied the first and third prongs of this test, but argues that Perkins has failed to establish that he was qualified for the Witness Protection Unit position, and that he was denied the position under circumstances giving rise to an inference of discriminatory intent.

The "Personnel Notice" advertising the availability of the Witness Protection position indicates that the minimum qualifications for the position are:

seven (7) years as a law enforcement officer, three (3) years of which must have been involved in criminal investigations, and possession of a valid motor vehicle license. Applicants must be in good general health and will be required to take and pass a physical examination prior to appointment as an Inspector. Applicants must be proficient in the use of firearms and may be tested prior to appointment.

A job description for "DCJ Inspector" submitted by the Division of Criminal Justice indicates that the position also requires:

> Considerable knowledge of police investigative procedures, including laws of arrest, search and seizure, preservation and presentation of evidence, etc.; knowledge of and ability to apply relevant laws and regulations; knowledge of the State judicial system and procedures; considerable interpersonal skills; considerable oral and written communication skills; ability to qualify in the use of firearms; ability to analyze and organize presentation of data.

Perkins has presented evidence that, in 2003, he had worked as a police officer in Connecticut for twenty years and had conducted criminal investigations for thirteen years. Perkins also testified at his deposition that he was proficient in using a firearm and that he had no health problems. Accordingly, for the purposes of summary judgment, Perkins has established the second prong of a prima facie case of race-based discrimination.

For the purposes of summary judgment, the Court will also assume that Perkins established a inference of discriminatory intent from the fact that the applicant ultimately hired for the Witness Protection position was Caucasian.[8]

Once a plaintiff has established a prima facie case, the defendant must then articulate "a legitimate, non-discriminatory reason for the [adverse employment action]." Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000). In this case, the Division of Criminal Justice has

---

[8] While Perkins has not presented evidence likely to be admissible at trial that the successful applicant was Caucasian, the Division of Criminal Justice did not deny in its answer to Perkins' complaint that all of the Inspectors hired in the relevant period were Caucasian males.

presented evidence that Perkins was not hired for the Witness Protection position because of an administrative error that resulted in his application being misdirected. Thus, "the burden shifts back to the plaintiff to prove that discrimination was the real reason for the employment action." Id.

One way of demonstrating discriminatory intent is to establish that the non-discriminatory reason asserted by the defendant is mere pretext. As the United States Supreme Court has explained:

> Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. . . . Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision.

Reeves v. Sanderson Plumbing Products. Inc., 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (citations omitted).

Perkins has failed to present evidence of pretext or other evidence that the real reason for his failure to obtain the Witness Protection position was discrimination. Perkins argues that the administrative error leading to his application being misdirected "might" not have been innocent, but rather the result of discrimination. In support of this argument Perkins points to (1) demographic information about applicants for positions with the Division of Criminal Justice over a three year period; (2) the experiences of Perkins' former colleagues at the New Haven Police Department; and (3) the fact that the equal opportunity statement was never removed from his application.

Perkins' statistical and anecdotal evidence does not support an inference that the real reason he was not hired was discriminatory animus. According to Perkins, all seven of the Inspectors hired between October 2001 and February 2004 were Caucasian males.[9] However, Perkins has not provided information about the demographics of the applicants or the applicant pool during this period.[10] Perkins does maintain that seven of the 96 applicants for the Elder Abuse position were African-American.[11] In other words, only 7.3 percent of the applicants for this position were African-American. Since only seven Inspectors were hired, it is not statistically significant that none of the successful applicants was African-American, and this data raises no inference of discriminatory intent. See E.E.O.C. v. Joint Apprenticeship Committee of Joint Industry Bd. of Elec. Industry, 186 F.3d 110, 117 (2d Cir. 1999) (noting that "a plaintiff's statistical evidence must reflect a disparity so great that it cannot be accounted for by chance").

According to Perkins, he knows of no African-American male who has ever been hired as

---

[9] While Perkins has not submitted evidence concerning the demographics of the successful applicants, the Division of Criminal Justice does not deny that between October 2001 and February 2004 it hired seven Inspectors, and that all were Caucasian males.

[10] Perkins' interrogatory answers include a description of documents containing demographic information. However, Perkins did not provide these documents. Perkins also submitted a document apparently prepared by the Division of Criminal Justice for the proceeding before the CHRO. This document suggests that three of the 65 Inspectors currently employed by the Division are African American. The document also may suggest that six Caucasian men were hired between October 2000 and 2001. However, this document, apparently a list of answers submitted without the corresponding questions, is of limited evidentiary value, particularly without an affidavit explaining the nature of the document.

[11] Perkins also provided information about applicants for one of the Investigator positions. However, this information reveals an even lower percentage of African-American applicants.

an Inspector for the Division of Criminal Justice from the New Haven Police Department, but he does know seven Caucasian males who were hired for these positions. However, Perkins has not provided evidence about whether these candidates were qualified, or the total number of African-American and Caucasian officers who applied from the New Haven Police Department. Thus, Perkins' anecdotal evidence that few African-Americans were hired by the Division of Criminal Justice does not show discrimination.

Perkins also points to the Division of Criminal Justice's failure to remove the equal opportunity supplement from his application. However, this merely created the <u>possibility</u> of discrimination, it does not constitute evidence that discrimination actually occurred. Nothing in the record suggests that the Division used the equal opportunity statements to screen applicants by race, or that the statements were purposefully left attached to applications for this purpose.

Finally, Perkins questions the motives behind the initial misdirection of his application and the failure of anyone in the Elder Abuse Unit to later re-direct his application to the Witness Protection Unit. However, Pietrandrea, the person responsible for misdirecting Perkins' application, submitted an affidavit stating that she did not know Perkins' race at the time she made this error. In response Perkins can provide only his supposition that Pietrandrea "probably knew" his race. Indeed, at his deposition Perkins admitted that he does not claim that his application was misdirected as a result of discriminatory animus.[12] This supposition does not support an inference that Pietrandrea not only knew Perkins' race, but also that she intentionally

---

[12] At his deposition Perkins said, "discrimination can be unintentional or intentional, okay. So whether or not ["EA"] . . . was added to that application unintentionally or intentionally, it still shows that there was some discrimination involved." Perkins also admitted that he was "Not saying [Perkins' race was] actually why she did it, but she had the opportunity of knowing that I was a black male applying for that position."

misdirected his application because of discriminatory animus.

If the Elder Abuse Unit had carefully scrutinized Perkins' application, it may be that they should have suspected that it was misdirected. However, under the circumstances no rational jury could conclude that the Elder Abuse Unit intentionally failed to forward Perkins' application to the Witness Protection Unit as a result of racial animus.

IV. Conclusion

The defendant's motion for summary judgment [Dkt. # 29] is GRANTED.[13] The defendant's motion to strike [Dkt. #34] is DENIED. The arguments in support of, and in opposition to the motion to strike were fully considered in connection with the motion for summary judgment.

**SO ORDERED** this _10__th day of March 2008, at Hartford, Connecticut.

                          /s Christopher F. Droney
                          **CHRISTOPHER F. DRONEY**
                          **UNITED STATES DISTRICT JUDGE**

---

[13] Because the Court finds that the defendant is entitled to summary judgment, it need not consider the defendant's argument that Perkins is barred from asserting his claims because he filed his complaint in this case one month before receiving a "right to sue" letter from the EEOC. See Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982) (holding that the timely filing of a charge of discrimination with the Equal Employment Opportunity Commission is not jurisdictional).